Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

*Counsel for Plaintiff*

[*Additional counsel on signature page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM BEYERBACH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AEROHIVE NETWORKS, INC., DAVID K. FLYNN, and JOHN RITCHIE,<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff William Beyerbach ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants (defined below), alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Aerohive Networks, Inc. ("Aerohive" or the "Company"), analysts' reports and advisories about the Company, and

1

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Aerohive common shares between November 1, 2017 and January 16, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Aerohive supplies wireless infrastructure equipment. The Company designs cooperative control wireless architecture, cloud-enabled network management, routing, and virtual private network solutions. Aerohive serves the healthcare, education, manufacturing, distribution, and retail industries throughout the United States.

3. Founded in 2006, the Company is headquartered in Milpitas, California, and its stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "HIVE."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Aerohive had uncovered sales execution issues at the Company at the end of the third quarter of 2017; (ii) consequently, Aerohive's revenue guidance for the fourth quarter of 2017 was overstated; and (iii) as a result, Aerohive's public statements were materially false and misleading at all relevant times.

5. On January 16, 2018, post-market, Aerohive issued a press release entitled "Aerohive Networks Announces Preliminary Fourth Quarter 2017 Financial Results," revealing that it "expects net revenue for the fourth quarter to be approximately $37 million, which is ***below the Company's***

*previously stated guidance of $40 million to $42 million*." (Emphasis added.) Aerohive attributed the reduced guidance to "underlying sales execution issues" uncovered at the end of the third quarter, stating in pertinent part:

> MILPITAS, Calif.--(BUSINESS WIRE)--Aerohive Networks™ (NYSE: HIVE) today announced preliminary results for the fourth quarter ended December 31, 2017.
>
> * * *
>
> - Aerohive® expects net revenue for the fourth quarter to be approximately $37 million, which is below the Company's previously stated guidance of $40 million to $42 million.
>
> * * *
>
> "We delivered non-GAAP operating profitability in our fourth quarter but were disappointed that our revenue was below our prior guidance," stated David Flynn, President and Chief Executive Officer. "*Following the change in our sales leadership at the end of our third quarter, we uncovered underlying sales execution issues* which became fully apparent in the last month of the fourth quarter. We have taken actions to replace underperforming sales team members, and we believe that the new people we have been putting in place, combined with other actions, will enable us to capitalize on our improved product offering and exciting roadmap in 2018."

(Emphasis added.)

6. On this news, Aerohive's share price fell $1.63, or 28.6%, to close at $4.07 on January 17, 2018, damaging investors.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). The Company's principal executive offices are located within this Judicial District.

11. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

12. Plaintiff, as set forth in the accompanying Certification, purchased Aerohive common shares at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

13. Defendant Aerohive is incorporated in California, and the Company's principal executive offices are located at 1011 McCarthy Boulevard, Milpitas, California 95035. Aerohive's common stock trades on the NYSE under the ticker symbol "HIVE."

14. Defendant David K. Flynn ("Flynn") has served as the Company's Chief Executive Officer ("CEO") since July 2007, as its President since November 2007 and as its Chairman since July 2013.

15. Defendant John Ritchie ("Ritchie") has served as the Company's Chief Financial Officer ("CFO") and Senior Vice President since September 2015, and as its Chief Operating Officer ("COO") since February 2017.

16. The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

17. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Aerohive's reports to the SEC, press releases and

presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18. Aerohive supplies wireless infrastructure equipment. The Company designs cooperative control wireless architecture, cloud-enabled network management, routing, and virtual private network solutions. Aerohive serves the healthcare, education, manufacturing, distribution, and retail industries throughout the United States.

### Materially False and Misleading Statements Issued During the Class Period

19. The Class Period begins on November 1, 2017, when Aerohive, post-market, held a conference call with investors and analysts to discuss its financial results for the period ended September 30, 2017 (the "Q3 2017 call"). On the Q3 2017 call, Defendant Ritchie stated that "[w]e are currently expecting Q4 revenue in the range of $40 million to $42 million," and touted Aerohive's "sales efficiency" and "sales productivity," stating in pertinent part:

> **John Ritchie**
>
> We are currently expecting Q4 revenue in the range of $40 million to $42 million.
>
> * * *

>Before I go through the quarter in detail, I would like to highlight some financial and operational milestones Aerohive achieved this quarter. ***We realized significant sales efficiency with our non-GAAP sales and marketing costs*** coming in at 39% of revenue driving this important metric to under 40% on a year-to-date basis. We delivered gross margins and EPS at the high-end of our guidance range and we were meaningfully cash generator, including cash and equivalents and short-term investments in the third quarter and on a full year-to-date basis.
>
> * * *
>
>During the quarter, we saw significant improvements in our sales efficiency as non-GAAP sales and marketing costs came in at $14.4 million or 39% of revenue in Q3, down $1.5 million from $15.9 million recognized in the second quarter. ***We are encouraged by several metrics that point to improved sales productivity.*** For the third quarter in a row, we have reported year-over-year decline in sales and marketing expenses. In addition, for the last two quarters and also on a year-to-date basis, our sales and marketing costs as a percentage of revenue were sub-40%.

(Emphases added.)

20. During the Q3 2017 call, Defendant Flynn touted Aerohive's sales team and operating efficiency, and discussed Aerohive's sales efficiency, stating in pertinent part:

>**David Flynn**
>
>In parallel, ***we continued strengthen our go-to-market, both through our full OEM relationship with Dell EMC and through the initiative we launched at the start of this year to pivot to a more channel centric go-to-market model to improve our sales efficiency and better address the mid-market.*** The foundation of this plan was the launch of our Connect to Select offering and the launch of a number of channel recruitment and development initiatives. Our sales leader, Tom Wilburn's strength and passion is around larger enterprise direct touch business.
>
>So when we launched this initiative in Q1, he augmented his team with channel centric sales leaders who built much of Ruckus' channel as well as new leadership in APAC. With this new program and team, we recruited 600 new resellers in the first half of the year and added 300 more in Q3. In Q3, we moved fully to a two-tier model by transitioning our direct VAR business through SYNNEX and we signed Wave as a distributor to help us develop the MSP and HSP channels.
>
>Now with this team in place and the program on the right trajectory, Tom has decided to move on to pursue opportunities that better align with his prefer to go-to-market model. ***Having successfully restructured my leadership team under a COO organization paired with a unified products and marketing organization, I now have the capacity to take on global sales leadership to drive this critical initiative working directly with our three fleet of sales leaders.***
>
> * * *

> I am encouraged by the significant progress of our product delivery and this has given Dell EMC the confidence in us to expand into a full OEM relationship. ***Our results demonstrate that we are steadily improving our operating efficiency while positioning ourselves to resume growth.***

(Emphases added.)

21. The statements referenced in ¶¶ 19-20 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Aerohive had uncovered sales execution issues at the Company at the end of the third quarter of 2017; (ii) consequently, Aerohive's revenue guidance for the fourth quarter of 2017 was overstated; and (iii) as a result, Aerohive's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

22. On January 16, 2018, post-market, Aerohive issued a press release entitled "Aerohive Networks Announces Preliminary Fourth Quarter 2017 Financial Results," revealing that it "expects net revenue for the fourth quarter to be approximately $37 million, which is ***below the Company's previously stated guidance of $40 million to $42 million.***" (Emphasis added.) Aerohive attributed the reduced guidance to "underlying sales execution issues" uncovered at the end of the third quarter, stating in pertinent part:

> MILPITAS, Calif.--(BUSINESS WIRE)--Aerohive Networks™ (NYSE: HIVE) today announced preliminary results for the fourth quarter ended December 31, 2017.
>
> * * *
>
> - Aerohive® expects net revenue for the fourth quarter to be approximately $37 million, which is below the Company's previously stated guidance of $40 million to $42 million.
>
> * * *

7

"We delivered non-GAAP operating profitability in our fourth quarter but were disappointed that our revenue was below our prior guidance," stated David Flynn, President and Chief Executive Officer. "***Following the change in our sales leadership at the end of our third quarter, we uncovered underlying sales execution issues*** which became fully apparent in the last month of the fourth quarter. We have taken actions to replace underperforming sales team members, and we believe that the new people we have been putting in place, combined with other actions, will enable us to capitalize on our improved product offering and exciting roadmap in 2018."

(Emphasis added.)

23. On this news, Aerohive's share price fell $1.63, or 28.6%, to close at $4.07 on January 17, 2018, damaging investors.

24. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Aerohive common shares traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aerohive common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records

maintained by Aerohive or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Aerohive;

- whether Defendants caused Aerohive to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Aerohive securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Aerohive common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Aerohive common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

32. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5
<u>Against All Defendants</u>**

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. This Count is asserted against Aerohive and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36. During the Class Period, Aerohive and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. Aerohive and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Aerohive common shares during the Class Period.

38. Aerohive and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Aerohive were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Aerohive, their control over, and/or receipt and/or modification of Aerohive allegedly materially misleading statements, and/or

11

their associations with the Company which made them privy to confidential proprietary information concerning Aerohive, participated in the fraudulent scheme alleged herein.

39. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Aerohive personnel to members of the investing public, including Plaintiff and the Class.

40. As a result of the foregoing, the market price of Aerohive common shares was artificially inflated during the Class Period. In ignorance of the falsity of Aerohive's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Aerohive common shares during the Class Period in purchasing Aerohive common shares at prices that were artificially inflated as a result of Aerohive's and the Individual Defendants' false and misleading statements.

41. Had Plaintiff and the other members of the Class been aware that the market price of Aerohive common shares had been artificially and falsely inflated by Aerohive's and the Individual Defendants' misleading statements and by the material adverse information which Aerohive's and the Individual Defendants did not disclose, they would not have purchased Aerohive's common shares at the artificially inflated prices that they did, or at all.

42. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

43. By reason of the foregoing, Aerohive and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and

the other members of the Class for substantial damages which they suffered in connection with their purchase of Aerohive common shares during the Class Period.

## COUNT II

**Violation of Section 20(a) of The Exchange Act Against The Individual Defendants**

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. During the Class Period, the Individual Defendants participated in the operation and management of Aerohive, and conducted and participated, directly and indirectly, in the conduct of Aerohive's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

46. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aerohive's financial condition and results of operations, and to correct promptly any public statements issued by Aerohive which had become materially false or misleading.

47. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aerohive disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aerohive to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Aerohive within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aerohive common shares.

48. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aerohive.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 25, 2018

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2018-01-22 12:38:22

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against against Aerohive Networks, Inc. ("Aerohive" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes and authorizes the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Aerohive securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Aerohive securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Aerohive securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

# Name

### Print Name

William Beyerbach

# Acquisitions

### Configurable list (if none enter none)

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 1/9/2018 | 425 | $5.75 |

# Sales

**Configurable list (if none enter none)**

| Date Sold | Number of Shares Sold | Price per Share Sold |
|---|---|---|
| None | | |

## Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**
(redacted)



**Signature**

**Full Name**

William Beyerbach

**AEROHIVE NETWORKS, INC. (HIVE)**                                                        **Beyerbach, William**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 1/9/2018 | Purchase | 425 | $5.7500 |